IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LG CONSTRUCTION GROUP LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1: 24 CV 00511 |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| WESTFIELD INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES the Plaintiff LG Construction Group LLC ("LG"), through its undersigned counsel, and as its complaint against Defendant Westfield Insurance Company ("Westfield"), states as follows:

### Nature of the Action

1. LG seeks a declaration that Westfield is obligated to defend LG, as an insured under certain commercial general liability and umbrella policies issued to LG Construction Group LLC, in connection with the arbitration proceeding captioned *Laura Ricketts, as sole beneficiary with power of direction under the Trust Agreement dated April 15, 2010 and known as Trust No. 8002354843, of which Chicago Title Land Trust Company is Trustee v. LG Construction Group, LLC* (the "Ricketts Arbitration").

2. LG also seeks to recover damages for Westfield's breach of its duty to defend LG in the Ricketts Arbitration.

### The Parties

3. Plaintiff LG Construction Group LLC is an Illinois limited liability company. Its member is LG Development Group LLC. LG Development Group LLC is an Illinois limited

liability company. Its members are Brian Goldberg, Matt Wilke, Cuda Development Group LLC and ML Development Group LLC. Brian Goldberg and Matt Wilke are Illinois residents and therefore Illinois citizens. Cuda Development Group LLC is an Illinois limited liability company. Its member is Barry Howard. Barry Howard is an Illinois resident. Consequently, Cuda Development Group LLC is an Illinois citizen. ML Development Group LLC is an Illinois limited liability company. Its member is Marc Lifshin. Marc Lifshin is an Illinois resident. Consequently, ML Development Group LLC is an Illinois citizen. Consequently, as all of its members are Illinois citizens, LG Construction Group LLC is an Illinois citizen.

4. Defendant, Westfield Insurance Company, is a corporation with its principal place of business in Westfield Center, Ohio and is therefore a citizen of Ohio.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because LG is a citizen of Illinois and Westfield is a citizen of Ohio and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because the claims arise from insurance contracts issued to LG in this district, and because Westfield's failure to honor its obligations under the policies has caused LG to suffer damages in this district.

## Facts Common to All Counts

**I. The Policies**

7. Westfield issued to LG a series of "commercial package policies" under policy number CMM 0 239 311, which included Commercial General Liability and Umbrella coverage parts, effective for consecutive annual periods between January 24, 2013, through January 24, 2019 (the "Primary Policies"). A copy of one of the Primary Policies with the effective dates of

2

January 24, 2017 through January 24, 2018 is attached as **Exhibit 1**. On information and belief, the terms, conditions, and exclusions during each period of the Primary Policies are set forth in the attached unless otherwise stated.

8. LG is a named insured under a schedule of named insureds as set forth under the Primary Policies.

9. The Primary Policies provide commercial general liability coverage with a $2,000,000 aggregate limit, and a $1,000,000 limit for each occurrence. It also provides for umbrella coverage with a limit of liability of $10,000,000 per "occurrence" and in the aggregate.

10. Through the Primary Policies, Westfield agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

11. The Primary Policies cover property damage "caused by an 'occurrence' that takes place in the 'coverage territory'" and that "occurs during the policy period."

12. Under the Primary Policies, "property damage" means, in relevant part, "[p]hysical injury to tangible property, including all resulting loss of use of that property."

13. The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

14. The term "accident" is undefined by the Primary Policies, however, it reasonably encompasses the unintended and unexpected harm caused by negligent conduct.

**II.     The Ricketts Arbitration**

15. Laura Ricketts, as the sole beneficiary with power of direction under the trust agreement dated April 15, 2010 and known as trust no. 8002354843, of which Chicago Title Land

Trust Company is trustee, is the owner of the property located at 430 Sheridan Road, Wilmette, Illinois (the "Property").

16. In or around September 2012, Ricketts retained LG to act as general contractor with respect to the construction of a custom single-family home on the Property (the "Project"). LG served as general contractor on the Project until the home was completed in or around 2016.

17. LG engaged various subcontractors to perform work on the Project.

18. On or about August 1, 2019, Ricketts filed a demand for arbitration against LG. A copy of Ricketts' Demand for Arbitration is attached as **Exhibit 2**. On or about November 7, 2022, Ricketts filed a second amended demand for arbitration. The second amended demand for arbitration is the operative demand at the time of the filing of this coverage action. A copy of Ricketts' Second Amended Demand for Arbitration ("Second Amended Demand") is attached as **Exhibit 3**.

19. Through her Second Amended Demand, Ricketts alleges that she moved into the home in "the late summer of 2015" (Ex. 3, ¶ 39) and seeks monetary damages arising from property damage occurring at that time and thereafter (*Id.* at ¶¶ 9-14, 40, 48-49). The complained of work includes inadvertent "defective, incomplete and missing Work." (*Id.*)

20. Ricketts alleges, in relevant part, that various construction defects have caused water infiltration and resultant damage to multiple areas of the house. (*Id.* at ¶¶ 49-53). Thus, the work performed by LG or its subcontractors may have inadvertently caused the damage claimed in the Ricketts Arbitration.

   **III.   LG's Claim**

21. In August 2019, LG demanded a defense and indemnification from Westfield, its liability insurer, in connection with the Ricketts Arbitration..

4

22. On or about December 16, 2019, Westfield acknowledged LG's August, 2019 tender and denied that it owes any coverage to LG Construction in regard to the initial demand for arbitration. A copy of Westfield's letter denying coverage for claims by LG is attached as **Exhibit 4**.

23. On April 28, 2020, Westfield and LG entered into a standstill agreement forestalling litigation relating to Westfield's denial of LG's tender of defense. The standstill was for a duration of 6 months. The standstill agreement was continuously renewed until April 2023 when it was not extended.

24. On or about August 8, 2023, Westfield demanded that LG withdraw its tender or it would file suit.

25. In response, on August 15, 2023, LG responded in writing advising that it would not withdraw its tender and that it looked to Westfield for the defense against Ricketts' Arbitration.

26. Despite having knowledge of the claims against LG since at least August 2019, Westfield has not provided a defense on behalf of LG in the Ricketts Arbitration.

## COUNT I
## DECLARATORY JUDGMENT

27. LG incorporates the allegations of paragraphs 1 through 26 as though fully stated herein.

28. Through the Ricketts Arbitration, Ricketts asserts claims of property damage that she alleges were caused by LG's work on the Project or through the work undertaken on its behalf by subcontractors engaged by LG.

29. Through the Ricketts Arbitration, Ricketts alleges that her property was damaged through the work performed by LG or its subcontractors as a result of inadvertent defective,

incomplete, and missing Work performed by LG or through the work undertaken on its behalf by subcontractors engaged by LG.

30. Through the Ricketts Arbitration, Ricketts alleges that property other than LG's own work was damaged as a result of work done on its behalf by its subcontractors.

31. Through the Ricketts Arbitration, Ricketts seeks monetary damages and other relief for "property damage" covered by the Primary Policies.

32. LG is entitled to a defense against the claims asserted in the Ricketts Arbitration pursuant to the Primary Policies.

33. LG's defense in the Ricketts Arbitration was tendered to Westfield in August 2019.

34. On December 16, 2019, Westfield denied the tender of LG's defense in the Ricketts Arbitration.

35. Westfield has not provided LG with a defense against the claims asserted in the Ricketts Arbitration.

36. A justiciable controversy exists between LG and Westfield as to Westfield's duty to defend LG against the claims asserted in the Ricketts Arbitration.

WHEREFORE, Plaintiff LG seeks a declaration pursuant to 28 U.S.C. § 2201(a) that: (i) Defendant Westfield is obligated to defend LG against the claims asserted against it in the Ricketts Arbitration, and further, (ii) it is estopped from asserting policy defenses based upon its failure to timely file a declaratory judgment action seeking a determination of coverage with respect to the Primary Policies, and for such other relief as the Court deems just.

## COUNT II
## BREACH OF CONTRACT

37. LG incorporates the allegations of paragraphs 1 through 26 as though fully stated herein.

38. Through the Ricketts Arbitration, Ricketts asserts claims of property damage that she alleges were caused by LG's work or the work of its subcontractors on the Project.

39. Through the Ricketts Arbitration, Ricketts alleges that her property was damaged through the work performed by LG or its subcontractors as a result of inadvertent defective, incomplete, and missing Work.

40. Through the Ricketts Arbitration, Ricketts alleges that property other than LG's own work was damaged as a result of inadvertent defective, incomplete and missing Work performed by LG's subcontractors.

41. LG timely tendered the Ricketts Arbitration to Westfield, demanding a defense and indemnification against the claims asserted therein.

42. LG has performed its obligations to Westfield under the Primary Policies, including the payment of premium, as well as its timely tender of the Ricketts Arbitration.

43. Westfield has declined coverage and refused to provide LG with a defense in the Ricketts Arbitration.

44. By failing to provide a defense to LG in the Ricketts Arbitration and repudiating its duty to defend LG in connection with the Ricketts Arbitration, Westfield has failed to fulfill its obligations to LG under the Primary Policies.

45. As a consequence of Westfield's breach of its obligation to provide LG with a defense in the Ricketts Arbitration, LG has been required fund its own defense costs to defend against the claims asserted in the Ricketts Arbitration.

46. LG has sustained actual damages in the form of the attorney's fees and other defense costs and will continue to incur further damages as a consequence of Westfield's breach of its obligation to provide LG with a defense in the Ricketts Arbitration.

WHEREFORE, Plaintiff LG requests: (i) that judgment be entered in its favor and against Defendant Westfield; (ii) that LG be awarded the damages caused by Westfield's breach of its obligation to defend LG in the Ricketts Arbitration, including, without limitation, attorney's fees, costs, and prejudgment interest; and (iii) such other relief as the Court deems just.

## COUNT III
## BAD FAITH – SECTION 155

47. LG incorporates the allegations of paragraphs 1 through 26 and 38 through 46 as though fully stated herein.

48. Westfield issued to LG a series of "commercial package policies" under policy number CMM 0 239 311, which included Commercial General Liability and Umbrella coverage parts, effective for consecutive annual periods between January 24, 2013, through January 24, 2019 (the "Primary Policies").

49. On or about August 1, 2019, Ricketts filed a demand for arbitration against LG.

50. In August 2019, LG demanded a defense and indemnification from Westfield, its liability insurer, in connection with the Ricketts Arbitration.

51. On or about December 16, 2019, Westfield denied that it owes any coverage to LG Construction in regard to the initial demand for arbitration.

52. Subsequently, Westfield and LG entered into a standstill agreement in regard to coverage issues arising from the original Arbitration Demand.

53. The parties did not renew the standstill on April 15, 2023

54. On or about August 8, 2023, Westfield threatened suit against LG unless it withdrew its tender of defense.

55. In response, on August 15, 2023, LG responded advising that it would not withdraw its tender and continued to look to Westfield for the defense against Ricketts' Arbitration.

8

56. Consequently, the standstill agreement was terminated no later than August 15, 2023.

57. On or about December 1, 2023, counsel for LG spoke with counsel for Westfield over the telephone and once again demanded coverage on the heels of the Illinois Supreme Court's decision in *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087 (November 30, 2023).

58. Westfield was aware from pleadings from the Ricketts Arbitration that were provided to it that LG was pursuing defense expenses for the claims asserted against LG in the Ricketts Arbitration from the subcontractors that performed the work on which the claims against LG was predicated.

59. Additionally, Westfield has been aware since 2019 that one of LG's general liability insurers had been contributing to the cost of LG's defense against the claims asserted in the Ricketts Arbitration.

60. On information and belief, although Westfield was aware of its obligation to provide a defense on behalf of LG in the Ricketts Arbitration, Westfield decided to ignore its own defense obligations to LG in connection with the Ricketts Arbitration. Despite having knowledge of the claims against LG since at least August 2019, Westfield has not provided a defense on behalf of LG in the Ricketts Arbitration.

61. Westfield's persistent refusal and delay to provide LG with defense and indemnity is vexatious and unreasonable in the following ways:

    a. By engaging in dilatory tactics including choosing to ignore its defense obligation and instead requiring LG to pursue its defense from other insurers;

    b. By requiring LG to file suit to obtain the defense and indemnity coverage it was otherwise entitled to pursuant to the terms of the Primary Policies and by

       requiring LG to pursue litigation against its subcontractors to secure the benefit of the defense to which LG was entitled under the Primary Policies;

   c. By feigning a *bona fide* dispute, including the assertion of "late notice" despite the fact that LG provided notice of the claims asserted against it in the Ricketts Arbitration within weeks of receiving notice of the Ricketts' claim.

62. Pursuant to Section 155 of the Illinois Insurance Code, LG is entitled to an award of extra-contractual relief as part of the taxable costs, including: reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

WHEREFORE, Plaintiff LG requests: (i) that judgment be entered in its favor and against Defendant Westfield on its breach of contract claim; (ii) that LG be awarded the damages caused by Westfield's breach of its obligation to defend LG in the Ricketts Arbitration on its breach of contract claim; (iii) that LG be awarded extra-contractual relief as part of the taxable costs, including: reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action; and (iv) such other relief as the Court deems just.

Dated: January 19, 2024

                                                        Respectfully submitted,

                                                        LG CONSTRUCTION GROUP LLC

                                                        By: /s/ David B. Goodman
                                                                One of its attorneys

David B. Goodman – dg@glgchicago.com
   ARDC No. 6201242
Nathan P. Karlsgodt – nk@glgchicago.com
   ARDC No. 6298908
Kalli K. Nies – kn@glgchicago.com
   ARDC No. 6318089
Christopher S. Hoffmann – ch@glgchicago.com
   ARDC No. 6336052
Goodman Law Group | Chicago
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
Tel: (312) 626-1888